UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| KALI REIS, : | |
|       Plaintiff, : | |
| : | |
| v. : | |
| : | C.A. No. 15-423ML |
| JIM LOMBARDI, individually and in his : | |
| official capacity, et al., : | |
|       Defendants. : | |

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

      Invoking 42 U.S.C. § 1983, Plaintiff Kali Reis has sued the Chief of Police of the City of Providence, Hugh Clements ("Chief Clements"), in his individual capacity, claiming that a Providence police officer allegedly known by the Chief to be a "bad apple" violated her constitutional rights through the use of excessive force and brutality.  Chief Clements has filed a motion to dismiss all of Plaintiff's individual capacity claims against him pursuant to Fed. R. Civ. P. 12(b)(6) arguing that the Second Amended Complaint lacks plausible factual allegations sufficient to establish supervisory liability under § 1983.  ECF No. 21.  The motion has been referred to me for report and recommendation.

      A word is required on the procedural posture of the pending motion.  Chief Clements has filed two motions to dismiss Plaintiff's supervisory liability claims.  Only the second is at issue now; the first was mooted by the filing of Plaintiff's First Amended Complaint as of right pursuant to Fed. R. Civ. P. 15(a).  See Text Order of Dec. 14, 2015.  Then, during oral argument on the second motion to dismiss, the Court inquired about Plaintiff's failure to plead that Chief Clements was being sued in his individual capacity and asked whether that deficit should moot

the motion.[1]  In response, Chief Clements requested the Court to assume that he had been named in both his official and individual capacities based on the complaint's many substantive allegations that appeared to assert an individual-capacity § 1983 supervisory liability claim. Shortly after argument, Plaintiff cured the ambiguity with a new motion to amend, the sole purpose of which was to make clear that Chief Clements is being sued in both his individual and official capacities.  The motion to amend was granted and the parties stipulated that the written and oral arguments already made in connection with Chief Clements's pending motion to dismiss are deemed to apply to Plaintiff's Second Amended Complaint.  Accordingly, the instant motion to dismiss attacks Plaintiff's Second Amended Complaint and all references to "the complaint" in this report and recommendation are to that pleading.

## I.    COMPLAINT AND MOTION

Plaintiff's Second Amended Complaint contains six Counts, three federal law claims under § 1983 and three state law claims.  See ECF No. 23-2.  It names as defendants the City of Providence and various City officials and employees.  Jim Lombardi, Treasurer of the City of Providence, is sued only in his official capacity.[2]  Police Officer Gregory Daniels, Chief

---

[1] A government official may be subject to supervisory liability only if he is sued in his individual capacity and the complaint states a claim with plausible factual allegations based on the official's own actions. Kucera v. Tkac, No. 5:12-CV-264, 2013 WL 1414441, at *4 (D. Vt. Apr. 8, 2013); Moore v. Camp, No. 2:05CV394, 2006 WL 3661195, at *2 (M.D. Fla. Dec. 13, 2006).  By contrast, a suit against a police chief in his official capacity is the same thing as a suit against the city for municipal liability.  See Hafer v. Melo, 502 U.S. 21, 25 (1991); Rosaura Bldg. Corp. v. Municipality of Mayaguez, 778 F.3d 55, 62 (1st Cir. 2015).

[2] Although the case caption names Treasurer Lombardi "[i]ndividually and in his official capacity," the body of the complaint states, "Defendant Lombardi is being sued in his official capacity." Compl. ¶ 8.  Consistently, all of the complaint's § 1983 allegations regarding Treasurer Lombardi are entirely conclusory; they completely lack any plausible facts on which to base individual liability. Compl. ¶¶ 51, 59-60, 65-66, 68-75, 77-84.  Because it is the body of the complaint, and not the caption, that controls, Uzamere v. United States, No. CA 13-505 S, 2013 WL 5781216, at *15 (D.R.I. Oct. 25, 2013), the Second Amended Complaint must be read as limiting the joinder of Treasurer Lombardi to an official capacity claim.

Clements, unknown Providence Police officers and unknown Providence Police supervisors[3] are sued in both their individual and official capacities. Count I is a § 1983 claim based on "excessive force and brutality" asserted against all defendants, as well as on the failure to supervise by Chief Clements and others. Count II arises under § 1983 but is based on municipal liability,[4] while Count III is a § 1983 supervisory liability claim. Counts II and III name the City of Providence, Treasurer Lombardi, Chief Clements and unknown Providence Police supervisors. The remaining claims arise under state law: Count IV alleges negligent hiring, training and supervision; Count V is based on assault and battery; and Count VI claims intentional infliction of emotional distress.

Chief Clements's motion challenges the viability of all six of the Counts against him in his individual capacity. He attacks the sufficiency of the federal § 1983 claims based on Plaintiff's failure to plead sufficient facts to establish supervisory liability. And once the federal individual liability claims are all dismissed, at the hearing, he supplemented his motion with the request that the Court decline to continue to exercise supplemental jurisdiction over the state law

---

[3] In the caption, this group of defendants is labeled as "Unknown Providence Police Administrators," while the body of the complaint refers to them as "Unknown Providence Police Supervisors." Compl. ¶ 15. The substance of the pleading makes clear that Plaintiff is suing these as-yet-unknown persons in their supervisory capacity. See, e.g., Compl. ¶ 80. It should be noted that if and when Plaintiff does join any named supervisor, each must individually satisfy the criteria for the imposition of supervisory liability under § 1983. See Solomon v. Dookhan, Civil Action No. 13-10208-GAO, 2014 WL 317202, at *13-18 (D. Mass. Jan. 27, 2014) (supervisory liability test applied separately to each supervisory defendant; only those with knowledge of lab technician's behavior who acted with deliberate indifference towards constitutional rights she might violate remained in case past pleadings stage).

[4] Because Count II purports to be only a claim for municipal liability, it cannot assert supervisory liability claims against Chief Clements in his individual capacity. Rubtsov v. L.A. Cty. Dep't of Children & Family Servs., No. CV1401839, 2016 WL 370682, at *3 (C.D. Cal. Jan. 29, 2016). To establish municipal liability under § 1983, Plaintiff must show that municipal employees were acting pursuant to some official policy or custom when they violated the plaintiff's rights. Malek v. Knightly, 56 F.3d 59, at *3 (1st Cir. 1995) (per curiam) (official capacity claim against county official fails because of dearth of allegations that misconduct was in conformity with official county policy or that named official acquiesced). Official capacity claims against city officials are redundant of the claims against the city itself. Collins v. Fulton Cty. Sch. Dist., No. 1:12-CV-1299, 2012 WL 7802745, at *10 (N.D. Ga. Dec. 26, 2012).

claims in Counts IV, V and VI and to dismiss them without prejudice. He does not challenge Plaintiff's claims against him in his official capacity.[5]

## II.    FACTS[6]

Plaintiff's complaint focuses on an incident that followed the breakup of a serious fight among patrons at Club Karma, a Providence nightclub, during the early morning hours of October 7, 2012. Compl. ¶¶ 16, 20, 22. That night, Plaintiff was employed at the Club as a security guard; she had just returned to work after time off for a physical injury, was limited to light duty and was still wearing a leg brace. Compl. ¶¶ 16, 20-21. She was also wearing her security uniform. Compl. ¶ 18. During the fight, she was posted in a different location, by the rear door of the Club. Compl. ¶ 23. After the fight was broken up, Plaintiff, who is certified in first aid, went to the assistance of a security coworker, also in uniform, who was lying on the dance floor, apparently unconscious. Compl. ¶¶ 21, 24, 25. As Plaintiff and another coworker were leaning over their fallen colleague, Providence Police Officer Gregory Daniels, together with other unknown officers, entered Club Karma. Compl. ¶¶ 6, 27, 28.

Officer Daniels approached Plaintiff and her two coworkers from behind. Making no attempt to aid the stricken employee, Officer Daniels employed an obscenity and yelled twice, "give her some air." Compl. ¶¶ 28, 29. Next he grabbed the Club employee who was assisting

---

[5] Because this motion to dismiss does not challenge the joinder of Chief Clements in his official capacity in connection with the municipal liability claims in Count II, I do not recommend dismissal of those claims at this time. Nevertheless, it is worth noting that other courts have dismissed such claims *sua sponte*. See, e.g., Stancati v. Cty. of Nassau, No. 14-CV-2694(JS)(ARL), 2015 WL 1529859, at *2 (E.D.N.Y. Mar. 31, 2015); Vondrak v. City of Las Cruces, No. CIV-05-0172 JB/LFG, 2009 WL 1300945, at *2 & n.1 (D.N.M. Mar. 30, 2009); Brown v. City of Moreno Valley Police Dep't, No. EDCV 08-00292 ODW (SS), 2008 WL 957846, at *3 (C.D. Cal. Apr. 7, 2008); see also Young v. City of Providence, 404 F.3d 4, 10 n.1 (1st Cir. 2005) (official-capacity municipal liability claim against police chief was treated by district court as functional equivalent of claim against city, was not raised on appeal and therefore was not discussed in appellate decision).

[6] These facts are drawn from well-pleaded factual averments in the Second Amended Complaint. As required whenever the court considers a motion to dismiss, all of them, together with all reasonable inferences that flow from them, have been accepted as true for purposes of this analysis. Katz v. Pershing, LLC, 672 F.3d 64, 70-71 (1st Cir. 2012) ("we accept as true all well-pleaded factual averments in the plaintiff's . . . complaint and indulge all reasonable inferences therefrom in his favor") (citing Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)).

Plaintiff in administering first aid and threw her across the dance floor; Plaintiff stood and raised her hands in the air.  Compl. ¶¶ 30-31.  Officer Daniels responded by hitting Plaintiff with a closed fist, spraying her in the face with pepper spray and wrestling her to the ground; he then got on top of her, placed his full weight on her back with his knee, tightly handcuffed her, and repeatedly pepper-sprayed and hit her with an object.  Compl. ¶¶ 32-35.  None of the other officers present intervened.  Compl. ¶ 35.  When the beating was over, Plaintiff was lifted by the handcuffs and thrown into a police wagon.  Compl. ¶ 37.

Plaintiff was never placed under arrest or charged with any violation of law.  See Compl. ¶ 38.  At some time later, Plaintiff's supervisor at the Club was allowed to approach Plaintiff and tell her that, if she apologized to Officer Daniels, he would release her.  Compl. ¶ 39.  With some persuasion, Plaintiff did so; she was released.  Compl. ¶ 40.  No medical attention was provided for her injuries.  Compl. ¶ 37.

Shortly after the incident, Plaintiff was approached by members of the Federal Bureau of Investigation ("FBI") and the Internal Affairs Division ("IAD") of the Providence Police Department.  Compl. ¶ 41.  They advised Plaintiff that there was a longstanding investigation into "the misconduct of Defendant Daniels and his ongoing pattern of abuse" and that they were looking for someone willing to provide testimony against him in an effort to remove him from the Providence Police Department.  Compl. ¶¶ 43, 44.  They asked for her cooperation, explaining that past victims had been unwilling to press charges and that her testimony would help.  Compl. ¶¶ 41, 43, 44.  Plaintiff believes that the video surveillance of the incident was confiscated by the FBI and IAD for the same purpose.  Compl. ¶ 42.

To establish that Chief Clements knew or should have known that Officer Daniels could be expected to engage in violent behavior in derogation of the constitutional rights of members

of the public like Plaintiff, the complaint alleges not only the existence of a serious FBI/IAD investigation of Officer Daniels, but also that the investigation was grounded in widely known abusive, excessive and volatile behavior that had persisted since at least 2001 and has been directed towards both members of the community and his fellow police officers.  Compl. ¶¶ 44-46.  According to the pleading, for "over two decades," Officer Daniels's pattern of abusive behavior has been "widely known" to the Providence Police Department.  Compl. ¶ 50.  Moreover, evidence of physical altercations, improper use of pepper spray and drawing of the service weapon, the use of racial epithets, verbal abuse, sexually suggestive language, shoving a female officer, lying at a disciplinary interview, insubordination and possession of a non-sanctioned "cattle prod-like" device has been presented during disciplinary hearings and lawsuits (including lawsuits filed by Officer Daniels against the Providence Police and its chief arising from disciplinary proceedings against him), and referenced in media reports.  Compl. ¶¶ 45-50.  Confirming that these facts are widely known, the complaint alleges that supervisory officials and various chiefs of the Providence Police Department have testified at hearings regarding Officer Daniels's inappropriate and abusive behavior.  Compl. ¶ 49.

Based on these factual allegations, coupled with the facts pertaining to the FBI/IAD investigation into which Plaintiff herself was drawn, and pointing to Chief Clements's long tenure as a rank-and-file member of the Providence Police Department, the complaint colorably asserts that Chief Clements has long been aware of Officer Daniels's troubling history of abusive and excessive conduct directed towards members of the community like Plaintiff.  Compl. ¶¶ 10-11, 45, 46.  Finally, the complaint alleges that, in his capacity as chief, Chief Clements had the ability to remove Officer Daniels from street duty but instead "placed the public, including

Plaintiff, at substantial risk of harm by allowing Daniels to remain in the field and continue to assault members of the community." Compl. ¶ 51.

The balance of the allegations against Chief Clements are conclusory. They include the claims that it is a longstanding and widespread custom at the Providence Police Department to allow excessive force, that Chief Clements acted maliciously and sadistically for the purpose of causing harm, and that he chose not to adequately train or supervise Officer Daniels to refrain from use of excessive force. See, e.g., Compl. ¶¶ 53, 59, 80. There are no facts alleging or permitting the inference that Chief Clements was directly involved in any way with the events at Club Karma during the early morning hours of October 7, 2012.

### III.  STANDARD OF REVIEW

Rule 12(b)(6) permits this Court to dismiss an action for failure to state a claim on which relief can be granted. See Fantini v. Salem State Coll., 557 F.3d 22, 26 (1st Cir. 2009). To survive a motion to dismiss, a complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests and allege a plausible entitlement to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007). A plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and these "[f]actual allegations must be enough to raise a right to relief above the speculative level." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555. Iqbal's holding is especially apt when a plaintiff seeks to impose supervisory liability on public officials who were not directly involved in the actionable conduct. Iqbal, 556 U.S. at 666. In Iqbal, the Supreme Court examined the sufficiency of the § 1983 factual allegations to state "a claim that petitioners deprived [plaintiff] of his clearly established constitutional rights." Id. at 666-67, 683. With only conclusory allegations against the moving defendants, the Court held

that the claims against the former Attorney General of the United States and the Director of the FBI must be dismissed. Id. at 666, 687. Since Twombly and Iqbal, it is clear that complaints should be considered holistically with a heavy dose of common sense, but that any claim that is not buttressed by plausible facts may not proceed to the discovery phase. Reilly v. Cox Enters., Inc., No. CA 13-785S, 2014 WL 4473772, at *3 (D.R.I. Apr. 16, 2014).

## IV. LAW AND ANALYSIS

Pointing to such cases as Mendonca v. City of Providence, C.A. No. 12-850S, slip op. at 7-10 (D.R.I. May 28, 2013), and Stewart v. Fleming, 838 F. Supp. 2d 1, 3-4 (D. Me. 2012), in which § 1983 supervisory liability claims against a police chief are dismissed for failure to state a claim, Chief Clements argues that Plaintiff's allegations that he knew or should have known of Officer Daniels's misconduct and that he failed properly to discipline, train or supervise Officer Daniels are the precise sort of meaningless conclusions that fail to clear the Twombly/Iqbal bar because they amount to mere recitations of the elements of supervisory liability. While the motion does not challenge the adequacy of Plaintiff's pleading that Officer Daniels's conduct caused a constitutional deprivation,[7] Chief Clements argues vociferously that it lacks plausible facts linking him to that conduct.

The law is crystal clear that a supervisory official like Chief Clements cannot be held vicariously liable under § 1983 based on *respondeat superior* or mere negligence nor may liability be imposed solely because of the supervisor's position of authority. Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014). Rather, a supervisor can be held liable "only on the basis of her own acts or omissions." Alicea v. Wilcox, No. 09-CV-12231-RGS, 2011 WL

---

[7] To establish supervisory liability under § 1983, a plaintiff must first show that the subordinate's behavior caused a constitutional violation. Ramirez-Lluveras, 759 F.3d at 19. Because Chief Clements has not challenged this aspect of the complaint, for purposes of this motion, the Court assumes that Officer Daniels violated Plaintiff's constitutional rights. See Cabrera-Berrios v. Pedrogo, 21 F. Supp. 3d 147, 154 (D.P.R. 2014).

1625032, at *1 (D. Mass. Apr. 28, 2011) (quoting Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989)); Benbow v. Weeden, CA 13-334 ML, 2013 WL 4008698, at *8 (D.R.I. Aug. 5, 2013).  Specifically, supervisory liability may be imposed only if either (1) the supervisor is a direct participant in the alleged rights-violating incident or (2) the responsible official supervises, trains, or hires a subordinate with deliberate indifference to the possibility that deficient performance may eventually result in a civil rights violation.  Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009); Flores v. Wall, No. CA 11-69 M, 2012 WL 4471101, at *9 (D.R.I. Aug. 31, 2012).  Further, to state a claim, the pleading must also allege causation with facts sufficient to show a strong and affirmative causal link between the supervisor's participation, condonation or tacit authorization and the underlying violation by the subordinate, such that the supervisor's conduct inexorably led to the violation.  Ramirez-Lluveras, 759 F.3d at 19; Sanchez, 590 F.3d at 49.

With no suggestion that Chief Clements was a direct participant, Plaintiff's pleading must clear the bar of deliberate indifference, which requires proof that the supervisor had knowledge of facts sufficient to draw the inference of the existence of a substantial risk of serious harm.  Ramirez-Lluveras, 759 F.3d at 20.  While "not every official who is aware of a problem exhibits deliberate indifference by failing to resolve it," Feliciano-Hernández v. Pereira-Castillo, 663 F.3d 527, 533 (1st Cir. 2011), "[e]ven if a supervisor lacks actual knowledge of censurable conduct, he may be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it." Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir. 1999); see Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581-82 (1st Cir. 1994).  Further, the facts allegedly known to the supervisor must amount to more than isolated instances of

unconstitutional activity; the pleading must demonstrate a known history of widespread abuse sufficient to alert a supervisor to the foreseeability of a grave risk of ongoing violations. Ramirez-Lluveras, 759 F.3d at 20; Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998). Even when rights are being systematically violated by a pattern of misconduct committed by a "single 'bad apple,'" such abuses may be sufficiently egregious to warrant supervisory liability. Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1294 (11th Cir. 2004).

Based on these principles, courts have permitted supervisory liability claims to proceed when the misconduct of a police officer was widely known, yet nothing was done to prevent that misconduct from causing a foreseeable constitutional deprivation. See, e.g., Barreto-Rivera, 168 F.3d at 49 (police superintendent may be sued for conduct of rogue officer disciplined thirty times for abusive conduct and recommended six times for dismissal from the force); Cabrera-Berrios v. Pedrogo, 21 F. Supp. 3d 147, 152-54 (D.P.R. 2014) (claim against police chief and superintendent survives motion to dismiss based on plausible inference that they were aware of content of Department of Justice report targeting unconstitutional activity by police officers; suit allowed to proceed despite absence of specific facts regarding what training, disciplinary, supervisory or recruiting deficits actually caused arrestee's injuries); Alicea, 2011 WL 1625032, at *1-2 (claim against police chief survives motion to dismiss based on allegations that officer had been convicted of assault and battery three weeks prior to incident and that chief was aware of numerous civilian complaints and lawsuits alleging excessive use of force, had responsibility to oversee use-of-force policy, yet took no action). As long as the factual allegations and the inferences to be drawn from them plausibly state a claim that the supervisor was aware of prior conduct yet failed to supervise, discipline or train to address the conduct, the case may proceed to the discovery phase. Solomon v. Dookhan, Civil Action No. 13-10208-GAO, 2014 WL

317202, at *13-16 (D. Mass. Jan. 27, 2014) (lab director and lab technician's supervisor aware of warning signs yet took no action to address them; motion to dismiss denied). On the other hand, when the "bad apple" police officer's prior misconduct is unrelated to the conduct at issue, a supervisory liability claim against the police chief should be dismissed. Saldivar v. Pridgen, 91 F. Supp. 3d 134, 137-38 (D. Mass. 2015) (none of eleven disciplinary violations over an eight-year period sufficient to put police chief on notice that police officer would sexually assault woman while on duty); Cote v. Town of Millinocket, 901 F. Supp. 2d 200, 237-38 (D. Me. 2012) (police officer's prior contacts with plaintiff insufficient to put chief on notice that he would make wrongful arrest).

For purposes of a Rule 12(b)(6) motion, I find that Plaintiff's plausible facts are sufficient to state a claim against Chief Clements in his individual capacity. Plaintiff's non-conclusory allegations place Chief Clements in the position with the power and authority to have taken action to protect the public from Officer Daniels in that he was the police chief at the time of the Club Karma incident. Compl. ¶¶ 10, 11; see Nascarella v. Cousins, No. 13-CV-10878-IT, 2015 WL 1431054, at *12 (D. Mass. Mar. 27, 2015) (superintendent with responsibility for use-of-force policy subject to supervisory liability for pattern of excessive use of force); Pacheco-Pacheco v. Toledo, No. CIV. 09-2121 JAG, 2011 WL 5977337, at *2-3 (D.P.R. Nov. 29, 2011) (motion to dismiss denied because supervisor aware of widespread use of excessive force but did nothing to correct it). Plaintiff's factual pleading also places Chief Clements in the position to have been aware of Officer Daniels's notorious history of abusive conduct as a longstanding rank-and-file member of the police department who had worked his way up the chain of command. Compl. ¶¶ 9, 10.

The allegations pertaining to the FBI/IAD investigation permit the inference that Officer Daniels's treatment of Plaintiff was so consistent with the serious misconduct under investigation that the FBI/IAD had confiscated the video surveillance of the Club Karma incident and asked Plaintiff to testify against Officer Daniels. This inference is further buttressed by the allegation that, in the past, Officer Daniels's abusive behavior had been directed at members of the community. Compl. ¶ 46. At the pleading stage of the case, this is sufficient to establish a causal link between Officer Daniels's prior misconduct and the behavior at Club Karma that resulted in the violation of Plaintiff's constitutional rights. Compl. ¶¶ 9, 10, 41-44. Similarly, the ongoing FBI/IAD investigation, linked to the factual allegations that Officer Daniels's pattern of misconduct had been widely known since at least 2001 as a result of hearings, lawsuits and media reports, Compl. ¶¶ 45-50, is sufficient to establish that Chief Clements knew or should have known that his failure properly to discipline, train or supervise Officer Daniels would create a grave risk of harm. See Morales v. Chadbourne, 793 F.3d 208, 222 (1st Cir. 2015) (plausible at pleadings stage that supervisors were deliberately indifferent to wide-spread issuance of detainers without probable cause). The complaint's allegations regarding Officer Daniels's presence and conduct at Club Karma on October 7, 2012, permits the inference that, despite this knowledge, Chief Clements failed to take appropriate action. Cabrera-Berrios, 21 F. Supp. 3d at 152-53 (DOJ report on "unconstitutional and unlawful activity" by police officers permits inference that inaction by superintendent and chief of police amounted to deliberate indifference).

In the face of a complaint redolent with plausible facts, Chief Clements's reliance on supervisory liability cases dismissed because the complaint was based solely on conclusory allegations is unavailing. For example, he cites Mendonca, C.A. No. 12-850S, in which the

12

individual liability claims against the police chief for his alleged failure to discipline, train or supervise were dismissed based on the dearth of specific factual allegations. Id., slip op. at 7-8. Similarly, in Stewart, the only two paragraphs with claims against the police chief were devoid of facts permitting the inference either that the chief had knowledge or that his action or inaction was affirmatively linked to the alleged constitutionally improper behavior of those he supervised. 838 F. Supp. 2d at 3-4. And in Ramirez-Lluveras, 759 F.3d at 20-22 & n.11, summary judgment in favor of the supervisory defendants was affirmed because the seven instances of alleged misconduct by the subordinate officer over a fourteen-year period were not sufficient to put the supervisor on notice that the officer's violent tendencies gave rise to a grave risk that he would commit an execution-style shooting of an unarmed civilian.

      Viewing this case from the vantage of the complaint only, it is not possible to predict whether Plaintiff's supervisory liability claim against Chief Clements will survive summary judgment after the operative facts are developed, id. at 23, except to note that "[t]he role of these defendants can be made clearer in discovery and nothing precludes later efforts to end the case against them should discovery not substantiate these inferences." Cabrera-Berrios, 21 F. Supp. 3d at 153 (quoting Marrero-Rodriguez v. Municipality of San Juan, 677 F.3d 497, 502-03 (1st Cir. 2012)). Nevertheless, because precise knowledge of the chain of events leading to a constitutional violation may be unavailable to a plaintiff at an early stage of civil rights litigation, a pleading that is merely plausible must survive a Rule 12(b)(6) motion even though it does not detail the ways in which the police chief's actions or inactions – whether arising from a lapse in supervision, discipline or training – are linked to the constitutional deprivation. See id. at 153. Measured by this yardstick, Plaintiff's complaint pleads enough. Accordingly, I recommend that

Chief Clements's motion to dismiss Plaintiff's § 1983 claims against him in his individual capacity should be denied.[8]

## V. CONCLUSION

For the reasons set out above, I recommend that Defendant Hugh Clements's motion to dismiss (ECF No. 21) the individual liability claims against him be DENIED.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
March 16, 2016

---

[8] Based on this recommendation, Chief Clements's oral motion to dismiss the state law claims made at the hearing should also be denied. See Burns v. Conley, 526 F. Supp. 2d 235, 241 n.11 (D.R.I. 2007) (retaining supplemental jurisdiction over state law claims when motion to dismiss federal claim is denied).